CELON COMPANY, Appellant, vs. DEPARTMENT OF TAXATION, Respondent.

*March 7—April 5, 1955.*

The cause was submitted for the appellant on the briefs of *Rieser, Mathys, McNamara & Stafford* of Madison, and for the respondent on the briefs of the *Attorney General* and *Harold H. Persons*, assistant attorney general.

A brief was filed by *Fairchild, Charne & Kops* of Milwaukee, as *amicus curiae*.

BROADFOOT, J.  The additional assessment embraced items reported in petitioner's income-tax returns for the fiscal years ending June 30th of each of the years 1947 to 1949, inclusive. Apparently, however, the items for the years 1947 and 1948 have been adjusted and the sole question presented on this appeal is as to the method of accounting to be employed in determining the Wisconsin income of the petitioner for the fiscal year ending June 30, 1949.

In the 1947 statutes the pertinent part of sec. 71.07 (2) read as follows:

"Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state. The amount of such income *apportionable* to Wisconsin may be determined by an allocation and separate accounting thereof, when, *in the judgment of the department of taxation,* that method will reasonably reflect the income properly assignable to this state, but otherwise in the following manner: There shall first be deducted from the total net income of the taxpayer such part thereof (less related expenses, if any) as follows the situs of the property or the residence of the recipient; provided, that in the case of income which follows the residence of the recipient, the amount of interest and dividends deductible under this provision shall be limited to the total interest and dividends received which are in excess of the total interest (or related expenses, if any) paid and allowable as a deduction under section 71.04 during the income year. The remaining net income shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the following three ratios: . . ."

Effective in May, 1949, that part of said section was amended to read:

"Persons engaged in business within and without the state shall be taxed only on such income as is derived from business transacted and property located within the state. The amount of such income *attributable* to Wisconsin may be determined by an allocation and separate accounting thereof, *when the business of such person within the state is not an integral part of a unitary business, provided, however, that the department of taxation may permit an allocation and separate accounting in any case in which it is satisfied that the use of such method will properly reflect the income taxable by this state. In all cases in which allocation and separate accounting is not permissible, the determination shall be made in the following manner:* There shall first be deducted from the total net income of the taxpayer such part thereof (less related expenses, if any) as follows the situs of the property or the residence of the recipient; provided, that in the case of income which follows the residence of the recipi-

ent, the amount of interest and dividends deductible under this provision shall be limited to the total interest and dividends received which are in excess of the total interest (or related expenses, if any) paid and allowable as a deduction under section 71.04 during the income year. *The remaining net income shall be apportioned to Wisconsin on the basis of the ratio obtained by taking the arithmetical average of the following three ratios: . . .*"

The italicized portions of the 1947 statutes were eliminated by the 1949 amendment. The italicized portions of the 1949 statutes were added by the amendment. The reason for the amendment is well illustrated by two exhibits that are part of the record herein. They are as follows:

. Report of the Wisconsin legislative council to the 1949 legislature:

"*Unitary Businesses Formula.* A bill to make it mandatory that a unitary business operating within and without Wisconsin report its income for Wisconsin income-tax purposes by using the statutory apportionment method rather than the separate accounting method.

"The present statute puts the emphasis on the separate accounting method and an interpretation by the Wisconsin supreme court in a case involving Standard Oil Company of Indiana (reported in 197 Wis. 630) has made it practically impossible for the department of taxation to require a number of large companies to apportion their income. As a result, many of such companies, while making substantial over-all profits, report little or no income to Wisconsin year after year. It is believed that the change in language recommended in this bill will permit Wisconsin to tax its fair share of the income of such companies. It is also believed that a recent decision of the United States supreme court in the case of *Butler Brothers v. McColgan,* 315 U. S. 501, supports the propriety of using the apportionment method in dividing the income of a unitary business."

Message of Oscar Rennebohm, governor of Wisconsin, to the 1949 Wisconsin legislature:

"Your special attention is called to a proposal which will make it mandatory that a unitary business operating within and without Wisconsin report its income for Wisconsin income-tax purposes by using the statutory apportionment method rather than the separate accounting method. The purpose of this measure is to enable the state of Wisconsin to collect income taxes from some enterprises from which we have been unable to collect any appreciable taxes before, although their profitable operations nationally are clearly revealed in their financial statements. The present statute puts the emphasis on the separate accounting method and an interpretation by the Wisconsin supreme court has made it practically impossible for the department of taxation to require a number of companies to apportion their incomes. As a result, many such companies, while making substantial over-all profits, report little or no net income to Wisconsin year after year. It is believed that the passage of this bill will permit Wisconsin to tax its fair share of the income of such companies. Your approval of this proposal will correct an existing inequity and will enable our department of taxation to collect substantial additional amounts in taxes on incomes which are in fact earned in Wisconsin and taxes which should be paid in Wisconsin. I bespeak your support for this important piece of corrective legislation."

The statute as amended in 1949 has been interpreted by the respondent as follows:

"Any person engaged in business within and without the state must report by the statutory apportionment method when the business of such person within the state is an integral part of a unitary business, unless the department of taxation expressly permits reporting on a different basis. The factors used in the apportionment method are as follows: . . ." Wisconsin Red Book, Administrative Rules and Orders (6th ed. 1950), p. 498, Rule 123.

Probably the language of the statute is sufficiently clear without the above history to require that the apportionment method of accounting be used by a company engaged in business within and without the state when the business of

such company within the state is an integral part of a unitary business. Certainly in view of the history of the amendment no other interpretation can be given to it.

The facts in this proceeding are not in dispute. In applying the statute to the facts we are faced with a question of statutory construction. First of all, What is meant by the term "unitary?" That term is defined in Webster's New International Dictionary (2d ed., unabridged), as follows:

"1. Of or pertaining to a unit or units; relating to, based upon, or characterized by, unity; as, the *unitary* method in arithmetic; a *unitary* or monistic tendency.

"2. Having the character of a unit; not divided; integrated; as, a *unitary* government; a *unitary* action.

"3. Composed of, or in part composing, a unit.

"4. Serving as a unit (sense 2)."

Neither the board of tax appeals nor the circuit court for Dane county attempted to define the word "unitary." In the decision of the board of tax appeals appears a quotation from 43 Words and Phrases (perm. ed.), p. 256, paraphrasing the decision in *State ex rel. Maxwell v. Kent-Coffey Mfg. Co.* 204 N. C. 365, 168 S. E. 397, which reads as follows:

"As regards state income tax, 'unitary business' may produce income to be allocated to several states, but such business cannot be split up arbitrarily and conventionally. 'Unitary business' is term applied to concern carrying on one kind of business, component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as independent units, as opposed to 'dual' or 'multiform business,' which must show units of substantial separateness and completeness, such as might be maintained as an independent business and capable of producing profit in and of themselves."

The exact language used in the decision in that case is as follows (p. 369):

"It is admitted in the brief for appellee that its business is unitary. That term is simply descriptive, and primarily means that the concern to which it is applied is carrying on one kind of business—a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as independent units. By contrast, a dual or multiform business must show units of a substantial separateness and completeness, such as might be maintained as an independent business (however convenient and profitable it may be to operate them conjointly), and capable of producing a profit in and of themselves.

"Conceding that a unitary business may produce an income which must be allocated to two or more states in which its activities are carried on, such a business may not be split up arbitrarily and conventionally in applying the tax laws. It would seem to be necessary that there should be some logical reference to the production of income; the distinction should be founded on a corresponding difference in apportionment of productive capital, investment, or employment, within the unitary business."

In the above decision businesses are divided into unitary and dual or multiform businesses. Under that illustration the business of the petitioner is clearly a unitary business as the component parts thereof were too closely connected and necessary to each other to justify a division. Under that illustration the business of the petitioner is not a dual or multiform business as the Iowa plant, standing alone, could not operate and produce a profit. It was not a separate corporation; both plants were owned by the Wisconsin corporation. The president of the company was the general manager of both plants. All sales, advertising, and purchasing for both plants were done in Madison. All accounting was done at Madison except the pay rolls in Iowa, which were then sent to Madison to be incorporated into the general books. Collections were made and all bills were paid at Madison.

Its only research laboratory was in Wisconsin. Its only machine shop was located here and a large part of the machinery for the Iowa plant was manufactured in the machine shop here. The Iowa plant was not equipped to print the products of the company to conform to the customers' orders. Thus, the Iowa plant was dependent upon the facilities at Madison for many of its services.

In the report of the legislative council reference was made to the case of *Butler Brothers v. McColgan,* 315 U. S. 501, 508, 62 Sup. Ct. 701, 86 L. Ed. 991. In that case the court said:

"As stated in *Hans Rees' Sons v. North Carolina, supra,* p. 133, '. . . the enterprise of a corporation which manufactures and sells its manufactured product is ordinarily a unitary business, and all the factors in that enterprise are essential to the realization of profits.' And see *Bass, Ratcliff & Gretton, Ltd. v. Tax Commission, supra,* p. 282. By the same token, California may properly treat appellant's business as a unitary one. Cf. *Great Atlantic & Pacific Tea Co. v. Grosjean,* 301 U. S. 412. There is unity of ownership and management. And the operation of the central buying division alone demonstrates that functionally the various branches are closely integrated. Admittedly, centralized purchasing results in more favorable prices being obtained than if the purchases were separately made for the account of any one branch."

In *Edison California Stores v. McColgan,* 30 Cal. (2d) 472, 479, 183 Pac. (2d) 16, the court said:

"In the present case all of the elements of a unitary business are present—unity of ownership, unity of operation by centralized purchasing, management, advertising, and accounting, and unity of use in the centralized executive force and general system of operation."

The main argument of the respondent is that the Iowa plant operated but a short time during the fiscal year and that its production as compared to the Madison plant was

very small. In effect they are advancing a *de minimis* rule as applied to operations. There is nothing in the statute that permits any such test to be applied. The statutory formula makes an adjustment for differences in operation. On the last day of the fiscal year the Iowa plant was in full operation. It was completely equipped and has been operating continuously since the 23d day of June, 1949. It is clear that at the time of reporting its income for the fiscal year ending June 30, 1949, the petitioner was operating a unitary business, with one unit in Wisconsin and one in Iowa.

The respondent seems to misread the statute in that it contends the Iowa plant is not an integral or sufficiently important part of the business to be considered as a unit. A close reading of the statute, however, will indicate that the word "integral" refers to the business of the company within this state. The board of tax appeals stated as a finding "that during the years in question the petitioner's Wisconsin and Iowa operations were not integral parts of a unitary business." There is no finding by the board, or by the trial court, that the business of the Celon Company was not a unitary business and that the operation in Wisconsin was not an integral part thereof.

In the case of *In re Morton Salt Co.* 150 Kan. 650, 95 Pac. (2d) 335, that court was dealing with a situation where the Morton Salt Company operated manufacturing plants in five states. During the 30's its business fell off and it discontinued the operation of one plant in Kansas. In its returns for two years the salt company deducted the cost incurred in connection with its ownership and maintenance of the closed plant from income directly allocated to Kansas. The court there held that this expense relating to the idle unit was a part of its over-all expense in conducting its unitary business. The respondent contends that this case can have no bearing because the Kansas plant of the salt company had operated and was temporarily closed down, while in this

case the Iowa plant was not yet integrated into the business of the Celon Company. Again the respondent errs in using the word "integral" with reference to the Iowa plant. Since sec. 71.07 (2), Stats. 1949, was in effect at the close of the petitioner's fiscal year, the statute required the company to report its income on an apportionment basis. There is nothing in the statute that permits the respondent to compel a report of its income on a separate accounting basis.

The respondent also calls attention to sec. 71.07 (5), Stats., which reads as follows:

"If the income of any such person properly assignable to the state of Wisconsin cannot be ascertained with reasonable certainty by either of the foregoing methods, then the same shall be apportioned and allocated under such rules and regulations as the department of taxation may prescribe."

In that connection the respondent contends that where either of the methods, separate accounting or apportionment, is used by the taxpayer, if it does not properly assign to the state of Wisconsin the income attributable to Wisconsin, the department has the discretion to prescribe what method shall be followed in order to arrive at the correct Wisconsin taxable income. We cannot agree that the statute says any such thing. The statute says that if the Wisconsin income cannot be ascertained with reasonable certainty, either by the separate accounting or apportionment method, then it shall be apportioned and allocated under such rules and regulations as the department of taxation may prescribe. There is no showing that the petitioner's Wisconsin income cannot be ascertained with reasonable certainty by either the separate accounting or apportionment method. In fact, the respondent is insisting that the separate accounting method will properly determine its Wisconsin income. It is true that the respondent has been given authority to make rules and regulations. Our attention is called to none that it has made under said section. We have checked carefully all of

its rules in the Wisconsin Red Book, Administrative Rules and Orders, published in 1950 and we can find none referring to this portion of the statute. It clearly is not applicable.

As stated above, the additional assessment included items embraced in the returns of the petitioner for three separate fiscal years. Because the argument upon this appeal has been directed solely to the required or permitted method of accounting we have assumed that the other items have been adjusted. It is probable that further computations may be required after the determination of the controversy advanced upon this appeal. If so, they can be made in the proper manner.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.